IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAREEM HASSAN MILHOUSE,** : | **CIVIL NO. 1:CV-11-00464** |
| Petitioner : | (Judge Rambo) |
| v. : | |
| **B.A. BLEDSOE,** : | |
| Respondent : | |

## M E M O R A N D U M

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Kareem Hassan Milhouse ("Milhouse"), an inmate confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg").  Milhouse alleges that his constitutional rights were violated in the context of a disciplinary proceeding.  For the reasons that follow, the petition will be denied.

## I.  Facts

On November 11, 2009, at 10:21 p.m., while performing a count on the first floor of USP-Lewisburg's Z-Unit, Senior Officer Specialist W. Robey arrived at cell 120 which housed Milhouse and his cellmate.  (Doc. 8-1 at 15.)  Milhouse's cellmate was covered up on the bottom bunk, preventing Officer Robey from seeing him for count.  (*Id.*)  Officer Robey knocked on the cell door and called his name several times with no response.  (*Id.*)  Milhouse then stated, "He is dead, you better call for

medical staff." (*Id.*) Officer Robey called for the unit's Lieutenant and a medic to come to the cell. (*Id.*) He also ordered Milhouse to cuff up. (*Id.*) When the Lieutenant and the medic arrived at the cell with several other staff and opened the wicket slot in the cell door to apply hand restraints, Milhouse's cellmate uncovered himself. (*Id.*)

As a result of this incident, Milhouse was issued an incident report charging him with Interfering with Staff in the Performance of Duties and Lying to a Staff Member, in violation of Sections 198 and 313 of the Bureau of Prisons' ("BOP") disciplinary code, respectively. (*Id.*) The incident report was delivered to Milhouse at 10:10 a.m. on November 12, 2009. (*Id.*)

An investigation was conducted on November 12, 2009, commencing at 10:10 a.m. (*Id.* at 16.) The investigating officer, Lieutenant E. Stuart, advised Milhouse of his rights and Milhouse responded that he understood them. (*Id.*) Further, the officer noted that when he read the incident report to Milhouse, he stated, "He was in bed all day, how do I know if he is dead or not." (*Id.*) He also noted that Milhouse displayed a very poor attitude. (*Id.*) After completing his investigation, Lieutenant Stuart referred the incident report to the Unit Disciplinary Committee ("UDC") for further review. (*Id.*)

The UDC held a hearing on November 14, 2009. (*Id.* at 15.) At the hearing, Milhouse was advised of his rights and stated that he understood them. (*Id.*) Further,

2

Milhouse stated, "I just close my eyes and listen to the voices." (*Id*.)  After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for further proceedings. (*Id*.)  Milhouse was advised of the DHO hearing and advised of his rights at that hearing. (*Id*. at 17-21.)  He was given copies of "Duties of Staff Representative," "Notice of Discipline Hearing Before the DHO," and "Inmate Rights at Discipline Hearing." (*Id*.)  Milhouse refused to sign the "Inmate Rights at Discipline Hearing" form. (*Id*. at 21.)

   The DHO held a hearing on January 19, 2010. (*See id*. at 11-14.)  On that date, the DHO noted that he had attempted to hear the case on three previous occasions, December 8, 2009, December 16, 2009, and January 5, 2010, but Milhouse's requested staff representative at each hearing date had to withdraw due to a conflict of interest. (*Id*. at 11.)  On January 19, 2010, Milhouse received a Warden-appointed staff representative whom he agreed to. (*Id*. at 12.)  At the hearing, Milhouse acknowledged that he understood his rights before the DHO and was ready to proceed with the hearing. (*Id*.)  He presented no documentary evidence for the DHO to consider. (*Id*.)  Milhouse testified that Section 11 of the incident report outlining the incident was accurate, except asserted that his statement to Officer Robey was as follows: "I don't know, he's probably dead.  He hasn't moved all day." (*Id*.)  The DHO noted that Milhouse made no complaints of procedural errors during the hearing. (*Id*.)

The DHO relied on the incident report and investigation, the reporting officer's eyewitness written account, and Milhouse's testimony, to support his finding that Milhouse had committed the Code 313 violation — Lying to a Staff Member. (*Id.* at 13.) Milhouse was sanctioned with disallowance of 14 days of good conduct time, 15 days of disciplinary segregation, loss of 120 days of commissary privileges, and loss of 120 days of telephone privileges. (*Id.* at 14.)

## II.   Discussion

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO

for a hearing. 28 C.F.R. § 541.15. Because Milhouse was charged with Interfering with Staff in the Performance of Duties, an offense in the greatest severity category, the matter was referred for a disciplinary hearing.

Greatest and moderate category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

In his petition, Milhouse challenges only the sufficiency of the evidence used to find him guilty of the Code 313 violation. However, in an abundance of caution, the court will also address the procedural requirements in Milhouse's case.

### A. Sufficiency of the Evidence

As stated above, Milhouse contests the sufficiency of the evidence relied upon in finding him guilty of the Code 313 violation. (Doc. 1 at 4.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir.

1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id*.

In the instant case, Milhouse alleges the evidence was not sufficient for a finding of the Code 313 violation. (Doc. 1 at 4.) However, the record belies this assertion. The DHO specifically noted that he considered the incident report and investigation, as well as Milhouse's own statement admitting to the accuracy of the incident report. (Doc. 8-1 at 13, 14.) The DHO credited the reporting officer's account of the incident over Milhouse's, stating,

> if Milhouse's testimony that he did not make the statement attributed to him in Section 11 of the incident report is to be believed, then the DHO would have to accept as fact that the reporting officer fabricated that part of Section 11 of the incident report. Staff found to have engaged in fabrication or falsification of official government documents would risk losing employment with the [BOP] as a result of violating the standards of employee conduct. Therefore, the reporting officer has his livelihood to lose, and absolutely nothing to gain by fabricating or falsifying a portion of Section 11 of the incident report. Inmate Milhouse, however, stands to gain by being less than completely honest regarding the facts of the incident. More specifically, inmate Milhouse stands to avoid being sanctioned for misconduct which he knows to be repetitive in nature, and

>would likely result in more stringent sanctions being imposed as a matter of progressive discipline.

(*Id*. at 13-14.)  The DHO also stated that because Milhouse made no effort during the incident to attempt to speak to his cellmate in order to get him to move, that fact suggests that Milhouse was intentionally lying to staff.  (*Id*. at 14.)  In light of this evidence, the court finds that there was "some evidence" to support the DHO's decision.  The documentary evidence and witness statements that provided an account of Milhouse's lying to a staff member confirm that the DHO acted with a sound evidentiary basis.  *Hill*, 472 U.S. at 455-56.  Thus, the petition will be denied with respect to Milhouse's claim that there was insufficient evidence to support the DHO's decision.

## B. <u>Notice of Charges and Investigation</u>

The record demonstrates that Milhouse received adequate notice of the incident report from the investigating officer, not in violation of BOP policy.  (Doc. 1 at 4.) Under 28 C.F.R. § 541.15(a), "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident."  *Id*. Further, "[t]he Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the [DHO] . . . ."  28 C.F.R. § 541.17(a).  The record in this case reflects that Milhouse received notice of the charges against him at 10:10 a.m. on November 12, 2009,

7

within 24 hours of the incident which took place at 10:21 p.m. the previous day. (Doc. 8-1 at 16.) Further, the DHO hearing was held on January 19, 2010. (*Id*. at 11.) Milhouse had been notified of this hearing at the UDC hearing on November 14, 2009. (*Id*. at 15.)

Additionally, the record reflects that the charges against Milhouse were promptly investigated. (*Id*. at 16.) Following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.14(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief). The record reflects that a BOP official, Lieutenant E. Stuart, conducted an investigation on November 12, 2009, the morning after the incident occurred. (Doc. 8-1 at 16.) In his report, the investigator noted that he advised Milhouse of his rights and interviewed him about the incident. (*Id*.) He noted that Milhouse displayed a "very poor attitude." (*Id*.) Milhouse was afforded the opportunity to identify witnesses, but declined to do so. (*Id*.) Lieutenant Stuart handed Milhouse a copy of the incident report at the time of the interview. (*Id*.) Since the record shows that an investigation was conducted by a

BOP official in a prompt manner and Milhouse was timely delivered the incident report, the court concludes that Milhouse was not prejudiced by a violation of BOP regulations, such as, failure to conduct an investigation. Thus, the petition will be denied with respect to any challenge to the notice of the charges and investigation.

### C.     Representation at DHO Hearing

The record reflects that Milhouse was given the opportunity to have staff representation at the DHO hearing. (*Id*. at 11-12.) It is noted that a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceedings. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996). *See also Bermudez v. Holt*, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010). Rather, due process requires that inmates be provided with assistance only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. In this case, the DHO documented that the hearing was rescheduled several times due to the unavailability of the requested staff representative. (Doc. 8-1 at 11-12.) Finally, on January 19, 2010, the hearing proceeded after the Warden appointed a staff representative, with Milhouse's consent. (*Id*. at 12.) The staff representative indicated that he met with Milhouse prior to the hearing and that Milhouse made no

specific requirements of him as staff representative. (*Id.*) The staff representative also indicated that it appeared that Milhouse's due process rights had been observed and that Milhouse was not contesting the incident report's accuracy of the description of the incident. (*Id.*) As there is no allegation that Milhouse is illiterate, and the issues involved in the case were not complex, the petition will be denied with respect to any challenge to staff representation.

### D. Statement and Witnesses

The record reflects that prior to the DHO hearing, Milhouse was advised of his rights with regard to making a statement and presenting witness testimony and indicated that he understood. (*Id.* at 11.) Moreover, the DHO is not required to call witnesses. "The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO." 28 C.F.R. § 541.17(c). Thus, because Milhouse chose not to call any witnesses, and the DHO was not required to call witnesses, the court cannot find that the lack of witnesses at the DHO hearing resulted in a violation of Milhouse's due process rights. The petition will be denied with respect to any challenge to a right to make a statement and present witness testimony.

**E.    Sanctions**

The record reflects that the sanctions imposed by the DHO are within the limits prescribed in BOP regulations. (Doc. 8-1 at 14.) The sanctions that may be imposed upon a finding of guilt of a moderate category offense include, *inter alia*, forfeiting earned statutory good time, up to 15 days of disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13. Milhouse is not entitled to relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, the petition will be denied with respect to any challenge to the sanctions imposed.

**III.    Conclusion**

For the above stated reasons, the petition for writ of habeas corpus will be denied.  An appropriate order will issue.

           s/Sylvia H. Rambo
           SYLVIA H. RAMBO
           United States District Judge

Dated:  May 18, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,** : **CIVIL NO. 1:CV-11-00464**
:
**Petitioner** : **(Judge Rambo)**
:
**v.** :
:
**B.A. BLEDSOE,** :
:
**Respondent** :

# O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

        s/Sylvia H. Rambo
        SYLVIA H. RAMBO
        United States District Judge

Dated: May 18, 2011.